Appellant v. Autovest, LLC Mr. King v. Appellate, LLC Neither are violations of Congressional mandates. And the debt collectors' false affidavits in this case openly defy Congressional mandates under the Fair Debt Collection Practices Act. Just like sewer service affidavits openly defy due process, and just like false affidavits of non-military service openly defy the Service Member Civil Relief Act. But Counsel, this is Judge Griffith, after Spokio, don't you have to show that there was an injury that's traceable to these false affidavits? And what are the injuries Ms. Frank experienced or suffered that's traceable to the Duman and Dunn affidavits and the Wagner affidavit? Two items. Number one are informational injuries that Congress sought to protect under the Act. Specifically truthful information. But you can't avoid the Article 3 standings. That's one of the things we learned from Spokio, right? What is the Article 3 standing here of Ms. Frank? That's what I'm getting at, obviously. Informational injuries based on untruthful information and sustaining actual damages in the trial court. Attorneys' fees and costs defending the case. But she said in her deposition that she took no actions based on the Duman and Dunn affidavits. They didn't affect her, she said, in her own deposition. Correct. The inquiry is not what Ms. Frank did or did not do. The inquiry is what would the unsophisticated consumer, or in some courts the least sophisticated consumer, would it have influenced their decision whether to pay or contest the lawsuit? And so how is that linked to, let's just take the Duman and the Dunn affidavits? Sure. How did that affect her in the litigation? How did that affect an unsophisticated consumer in their relations with their creditors? Well, number one, it interferes with their ability to determine potential defenses, you know, such things as standing, trustworthiness of evidence, and the amount owed. But did that do that here? She doesn't allege that, does she, here? Well, we... She says that it didn't impact her. But again, at least for purposes of the Act, the inquiry is not Ms. Frank, and she did sustain actual... Oh, no, no, no, no. I think it... Isn't that what... Maybe I'm misreading Spokio, but I think that's very much the question. How did it impact Ms. Frank? So again, I'll say the informational injury is based on untruthfulness in the affidavits, on probative and material issues of standing, trustworthiness, and the admissibility of evidence, in addition to actual damages of attorney's fees and costs to uncover these things. So how would you distinguish it from the hypothetical in Spokio? This is just for you, Austin, sorry. How would you distinguish it from the statement in Spokio to the effect that it's hard to imagine how an incorrect zip code could work concrete harm sufficient to give rise to Article III standing? You're distinguishing that here. I would say that Congress didn't seek to protect incorrect zip codes. It did seek to protect false, deceptive, and misleading debt collection practices. That's definitely true because that's just from the language of statute. And I guess the question is, does the particular type of falsity that you're alleging on the facts of this case count? Because you could say that false statements were an issue in Spokio too, but then there was one particular falsity that was identified that wouldn't be enough. And so the question would be... I'm not saying you can't do it or that you haven't done it. I'm just asking for your assessment of what the difference would be here. I think these are congressionally protected rights of Ms. Frank on material issues. In fact, I'll go so far as to say outcome determinative issues. And why is it outcome determinative? What is it about the alleged misstatement about the affiliation of the two individuals with all of us that makes it outcome determinative? Obviously, a party has to prove standing in order to collect. They have to prove that the amount owed is correct. And there has to be admissible evidence, including compliance with the UCC. In this case, UCC notice for a deficiency judgment. Without it, there can be no judgment. Did I answer your question, Judge? Yeah, I think I understand the response you gave. Okay. All of these... I was a tad on. Sorry. Okay, Mr. Miller, I'm going to ask a question about your argument about falsity and identification. If Christine Dunn, in signing the affidavit that she did, the paper she did, had said, my name is Alice Dunn. Then otherwise said, and I work for Andrews & Associates, which is a servicing agent for Autovest. So the only mistake was she gave the wrong first name? Would you have a claim for that? It would be false. Yeah, I would say that names generally are not actionable. However, if we're talking about an affidavit, I think there's an obligation to provide meaningful disclosure. An incorrect first name probably isn't meaningful and therefore not actionable. If we're talking about a letter, definitely.  No, go ahead. I'm sorry. What if it made it hard for you to figure out who this person was? You couldn't find, you went on the website, you couldn't find any Alice Dunn working for Andrews & Associates. That certainly could influence an unsophisticated consumer's decision whether to contest or concede the suit. How? If she doesn't, well, and again, I'm just thinking of this case, but hypothetically, if the consumer has never done business with this debt collector, they may not know if they even owe them a debt at all, let alone the amount that the collector is claiming. Because you can't tie that specific individual to a particular debt collector, at least the one that's suing her. So you think it would be actionable if she had said Alice Dunn rather than Christine Dunn? Yeah. Yeah, now that I've thought through the court's hypothetical, yes. But I was thinking more generally in telephone calls, you know, desk names are typically not actionable. But in the case of an affidavit, certainly that could be actionable. Thank you. A couple of items. You mentioned attorney's fees and costs here. But as I read her deposition, Ms. Frank said none of these misrepresentations or misstatements are what caused her to retain an attorney. Right. So that's not an injury that arises from, even assuming that could satisfy Article III, that's not an injury that arises from the misrepresentations, is it? She sustained actual injury. Was it because of Duman's false statement or... All the false statements collectively that you referenced, the misstatements and misrepresentations that you referenced, all three, the Dunn, Duman, and attorney's fees. Well, she did testify she was confused as to why she would be responsible for attorney's fees, so that certainly is tied to retaining counsel, which is another reason why she incurred all those costs and fees. Where did she say that, that she was confused about why she'd be responsible and so that's why she hired an attorney and incurred fees? It was in our brief. May I provide that to you on rebuttal, Judge Millett? Absolutely, sure. Thank you. Thank you. Just one quick point, because I know I'm out of time, that I really need the court to understand. The consequences of not reversing this case and allowing false testimony undermines not just the FDCPA or the Fair Debt Collection Practices Act, but the requirements in superior court of first-hand personal knowledge to obtain a deficiency judgment in repossession cases. And probably, maybe even more importantly, signaling to other debt collectors that false testimony will be countenanced, at least in the District of Columbia. Thank you, Mr. Gregory. Let me make sure my colleagues don't have any further questions for you at this time. If not, we'll hear from you in rebuttal and we'll hear from Mr. King now. Good morning, Your Honors. May it please the court, my name is Scott King. I represent the Appalese Auto Vest and Michael Andrews & Associates. The Appalese asked the court to affirm. Ms. Frank's legal arguments suffer from a common flaw, the undisputed facts that are on the record in this case. While in District Court, Ms. Frank had three theories, we're now down to two, the Contingency Fee Theory and the Employment Theory. I'm going to talk about the Contingency Fee Theory first because I can dispose of it quickly. Ms. Frank asserts that Auto Vest violated the FDCPA by improperly seeking to collect from her attorney fees calculated on a contingency fee basis. That simply didn't happen. The balance due on this contract was $9,365. Auto Vest's lawyer in the elections action, Mr. Wagner, testified that he had a 20% contingency fee. 20% of $9,365 is $1,873. But in the collections action, Auto Vest did not seek attorney fees of $1,873. It only sought attorney fees of $895. Mr. Wagner calculated those fees based upon the load start method, a reasonable number of hours times a reasonable rate. Can you just point me in the record to where, are you talking about other than in the attorney fee affidavit? So where else was it that you specifically said we're only seeking $895 in attorney fees? It was in the attorney fees affidavit, Your Honor. Okay, so that affidavit on the front talks about the contingency, 20% and this one's a 20%. And on the back it does this calculation. Where does it say all we're seeking is the $895 in that affidavit? It just has two different numbers and then says the amount of attorney fees requested but doesn't say what that amount is. So how is she supposed to know which one is what they're requesting? Did I just miss it? Your Honor, I'm trying to pull that up as well. Do you have the... KA-9899. Hang on one second. I just don't see where they say which of these two numbers we're seeking. It's $895. It's in the total. In fact, it's highlighted in red on the... Well, no, I know that number's there, but then on the front there's, at least on my copy, I don't know who put this box around it, but there's a box around the 20% contingency. My fee on this case is a 20% contingency fee of any monies recovered. So there's a box. I don't know who did that box. So you've got a box around that and you've got a box around $895, but then I don't see anything after that that says which of those two boxes is what's being sought in this case. There would be no reason to list the detail of the amounts of the time spent nor of the hourly rates if they were not seeking attorney fees using the Lodestar method. If he was only seeking attorney fees on a contingency fee... I'm asking how an unsophisticated consumer... So you said it was crystal clear, you could take care of this easily, that all they were seeking was $895, and I'm telling you, assume I'm an unsophisticated consumer, that if I were to read this, I would see a box that says 20% contingency fee and I would see another box that says $895 and I would read all the other sentences around there and say which one are they seeking in this case? And I wouldn't see it anywhere. That seems awfully confusing. Wait, I don't... Scared by that 20% contingency thing, that's a scary thing. And there's all the other competitions, but I'm not a lawyer, I'm an unsophisticated consumer, I don't know why all that stuff is there. But you have to at least say which one you're seeking. Your Honor, I would believe that the affidavit does state that they were seeking the $895, that is the amount in the total column. Ms. Frank, of course, didn't pay that amount or any other amount. But the whole point of... But you'll agree they're both in boxes, right? I'm not saying... There's no doubt that that's the total of all the little numbers up on top of that. Right, Your Honor? I'm not spitting in your mouth, I'm just saying you've got two boxes here and I'm just asking whether you're an unsophisticated consumer, as a matter of law, an unsophisticated consumer. Your Honor, I believe... I'm sorry, I did not mean to interrupt. No, no, no. Go ahead. I think you know my question. I do. I believe it's in the motion for default. Okay, so I was looking at the wrong document? I think so, Your Honor, and I'm trying to locate that right now. So I tried to ask you which document up front I should look at. So if I was looking at the wrong one... I don't know if it's in the appendix or not, but it is in the motion for default. Okay, so that's something we don't have here in front of us. It's in the record, but I don't believe it's within the appendix, Your Honor. I thought you were relying mainly on this item. Which is why the other one wouldn't be in the joint appendix. Your Honor, I'm sorry, I didn't catch your question. I didn't realize that there was another document that you were relying on. I thought your reliance was on this document that's in the joint appendix, 98-99, unless maybe the other one's in there too. I'm not seeing it, Your Honor, in there, but I know in the motion for default... I believe that's... what specifies the number. And I'm not seeing where that... I don't believe it is in the record. I'm sorry, I don't believe it's in the joint appendix. It is in the record, but I don't believe it's in the joint appendix.  I'm looking at the other one. I'm looking at the motion for default, Your Honor. It says $895. Okay. Maybe you can provide a copy of that to the court? Yeah, we can point that out to you where that is in the record. It's part of the summary judgment proceedings. Mr. King, this is Judge Griffith. You've been arguing a merits question. Would you argue the standing issue for us? As you can tell, we were... several of us were interested in speaking with your friend about the standing question. Would you help us think that through? Your Honor, there is absolutely no actual injury with respect to Ms. Frank. Ms. Frank testified that the items that are at issue in this case didn't matter to her. She testified that she neither took action nor failed to take action with respect to those items. Spokio requires an actual injury to the plaintiff before the court. I agree with the analysis that Spokio bars this claim because as to Ms. Frank, she suffered no injury. You heard your friend's argument that she's got to go to court, she's in litigation, there are court costs, and those are some of the injuries she suffered. None of those injuries, however, are traceable to her claims in this case. While she incurred attorney fees, as the district judge noted, she incurred those because she did not think she owed the money to AutoVest, not with respect to any of the items that we're talking about. So none of those, in Spokio, in Article 3, requires the injury to be directly traceable to the violation. What about her claims in her deposition? Any claims about stress, fear of being taken advantage of? What about those? Those all relate directly to her assertion that she did not know AutoVest and was not aware that the contract had been assigned to AutoVest. There were letters to that effect telling her, but she denied receiving them prior to the court action. The information you read... But her claims of being scammed had to do with her not knowing AutoVest. It had nothing to do with any of the issues that are the subject of this complaint. It's not the deposition. I don't mean you personally. I don't know who it was. There were questions as to the statement by Mr. Duman. Did you refrain from taking action? Did you take action? Did you spend money? But I didn't see any questions about whether these falsities... You're making an assumption, I think, about what the source of the stress and fear of being taken advantage of, but that wasn't actually asked at the deposition. Whether that misrepresentation caused any of the stress or fear that you claim you suffered here. You're making an inference. I believe that elsewhere that she testified the reason for her stress was because she did not know who AutoVest was. Your Honor, the reference in the record on the motion for default judgment is document 34-7. It's Exhibit 7, AutoVest Motion for Summary Judgment. Thanks. Actually, why did Mr. Duman say he was an employee and a Senior Technical Product Manager for AutoVest under oath? Your Honor, the answer to that is not in the record. It was false, though, right? I'm a custodian of records and a Senior Technical Product Manager employed by AutoVest. Those were false statements under oath? Your Honor, they were false statements. That was a mistake. And under oath when he said that. Okay. Your Honor, that is correct. It was a false statement. But it was false statements. I believe the answer to that question, again, it's not in the record, but I believe that the answer to that question is that the attorney for this case prepared the affidavit and Mr. Duman should have corrected it before he signed it, but he didn't, and that's a mistake that gives rise to claims. Okay. Thank you. Your Honor, the per se rule that Mr. Gregory is advocating for violations of 1692E makes HASH the least sophisticated consumer standard. It makes HASH the materiality requirement that courts across the country have helped apply to the interpretation of the FDCPA. In addition, it also violates Spokio because under that interpretation, any false statement, no matter how trivial, would give rise to a violation, and that's simply not the case under Article III. There has to be actual concrete injury tied to the violation, and in this case, there is no such injury on the record. The employment theory that has been advocated on this record has no merit. The court should affirm the district court's grant of summary judgment I was going to... I don't know if I have any more time left. I thought I heard bells. I think so, but you can wrap up. All right. Well, I was going to move to another point, but if I don't have any more time, unless the court has any other questions, Otto Vest and Michael Andrews and Associates suggest that the district court analyze this case correctly. The facts of this case control its outcome. The facts show that summary judgment was appropriately rendered, and with that, I will conclude. Thank you very much. Thank you, Mr. King. Mr. Gregory, we'll give you a rebuttal. Thank you, Your Honor. Judge Millett, you asked me about the testimony from Ms. Frank concerning her being confused about the attorney's fees that can be found in the record at JA 47, which is her deposition testimony, lines 12 through 15. A couple quick points. The fee affidavit from Wagman is the only fee affidavit in the underlying case. As Judge Millett, you pointed out, one page says one thing, another page says another, and an unsophisticated consumer wouldn't know, just like Ms. Frank wouldn't know, what she's supposed to pay or why she's even having to pay it. And I will point out that the unsophisticated consumer is below average intelligence and sophistication. I think another important point is that the appellants never had a right, either contractually or legally, to recover fees in the first place. With respect to Spokio, Ms. Frank suffered a concrete injury because the informational injuries in particular that she suffered are protected by Congress, which therefore require no additional proof of harm. And unless the court has any other questions, we would ask that the course reverse and remand. There are no questions. Thank you, Mr. Gregory, and thank you, Mr. King. We'll take the case under submission. Thank you.
judges: Srinivasan, Griffith, Millett